**Fontaine BLACK**

v.

**William CLARK, Secretary of the Department of the Interior.**

**Civ. A. No. 84–4874.**

United States District Court, E.D. Pennsylvania.

April 3, 1985.

Dona S. Kahn, Philadelphia, Pa., for plaintiff.

Serena Dobson, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

Plaintiff filed this Title VII action alleging that defendant discriminated against her by refusing to reclassify her position to a higher salary level and by retaliating against her for, amongst other things, lodging an employment discrimination complaint. Count I of the complaint alleges that from March, 1980 to the present defendant has discriminated against plaintiff on account of her race and sex. Discriminatory practices are alleged to include defendant's refusal to process plaintiff's request for a promotion in the same manner as similar requests made by similarly-situated white males. Count II alleges plaintiff has been retaliated against from September 17, 1980 to the present for writing a letter to the Under-Secretary of the Interior concerning racist statements made by a fellow employee. In Count III plaintiff alleges she has been the object of unlawful retaliation from April 11, 1983 to the present on account of her testimony in another civil action.

Presently before me is defendant's motion to dismiss Counts II and III of the complaint, or, in the alternative, for summary judgment on these counts. Specifically, defendant contends Counts II and III are barred for failure to exhaust administrative remedies. Because matters outside the pleadings are relied upon by the defendant I will treat the motion as one for partial summary judgment which will be denied.

In June of 1979 plaintiff was promoted to the position of Regional Equal Opportunity Officer at the National Park Service's (NPS) Mid-Atlantic Regional Office (MARO). Plaintiff's supervisor recommended, in April of 1980, that plaintiff be promoted from a salary grade GS–12 to GS–13. Thereafter, a MARO employee conducted a "desk audit," concluding that plaintiff's position was properly classified as a GS–12 job. An advisory evaluation performed by the Washington Office (WASO) reached the same conclusion. Plaintiff filed a timely employment discrimination complaint with NPS on November 17, 1980. In it, plaintiff alleged she had been discriminated against on account of her race and sex in (1) the denial of her request for a promotion and (2) the referral of her request to WASO which resulted in a substantial delay in processing her request.

In September of 1980 plaintiff lodged a written complaint with the Under-Secretary of the Department of Interior about a document prepared by John Carroll, a Personnel Officer of NPS–MARO. The document contained six statements which plaintiff believed expressed racist sentiments. Matters become somewhat murky at this point.

Apparently plaintiff was the subject of a Personnel Management Evaluation (PME) sometime in April, 1981, which was unfavorable. The parties agree that plaintiff filed a second administrative complaint on April 17, 1981 alleging that the PME constituted an act of retaliation against her, but disagree as to the remaining contents of the complaint. Defendant contends plaintiff's April 17 complaint was confined to retaliation on account of plaintiff's prior filing of an employment discrimination claim. Plaintiff asserts the April 17 complaint embraced retaliation on account of the prior claim as well as on account of the letter to the Under-Secretary. Each party

has attached different documents purporting to be the April 17 complaint.

■ The scope of a Title VII action is defined by reference to the scope of the administrative investigation which can reasonably be expected to grow out of the initial charge of discrimination. *Ostapowicz v. Johnson*, 541 F.2d 394, 398 (3d Cir. 1976). Assuming defendant's version of the April 17 complaint is the correct one[1] I believe it adequately raises the issue of retaliation on account of the letter to the Under-Secretary. While the bulk of this document addresses what occurred at the PME, it also contains the following statement:

> Ms. Garrett and/or Mario Fraire also wrote two letters for the Deputy Director's signature directing them to take action against me for writing letters to management officials in the Department concerning racial remarks from the MAR Personnel Officer.

Thus, I believe plaintiff has properly pursued her administrative remedies with respect to this charge of discrimination and will deny defendant's motion as to Count II.

Count III presents greater difficulties inasmuch as plaintiff clearly has not filed a formal administrative complaint explicitly alleging retaliation on account of her March, 1983 court testimony. While awaiting a decision on her two administrative complaints, the following appears to have transpired. During the spring and summer of 1981 plaintiff pursued various alternative remedies. These efforts were rewarded only by bureaucratic buck-passing.

In August of 1981 an investigation of plaintiff's November, 1980 discrimination complaint was conducted. Plaintiff received a copy of the results of that investigation on January 15, 1982. The cover letter accompanying the report stated that an appropriate official would contact plaintiff in an attempt to resolve her complaint informally. If an amicable resolution could not be reached plaintiff was to be informed of the proposed disposition of her complaint together with her appeal rights. None of these promises was fulfilled.

Sometime in late August or early September, 1982, another "desk audit" of plaintiff's job was conducted, but this audit was prompted by forces other than plaintiff's complaint. Plaintiff's job was found, once again, to be properly classified as a GS–12 position. When plaintiff learned of the audit, on September 24, 1982, she sent a memorandum to the Assistant Director of the Office for Equal Opportunity complaining of continuing discrimination and asking that the memo, with enclosures, be incorporated into her November, 1980 complaint.

In March of 1983 plaintiff testified, under subpoena, in a Title VII action brought by another NPS employee. Some fourteen months later, on May 24, 1984, plaintiff's present counsel wrote to the NPS Director of Equal Employment Opportunity seeking amicable resolution of the "continuing question of retaliation" against plaintiff for her testimony. The letter also made reference to the outstanding written complaints of discrimination. On June 25, 1984, an official in the EEO office acknowledged receipt of this letter and stated that plaintiff's complaints of retaliation on account of her testimony would be referred to an EEO counsellor—the first stage of administrative processing—whom plaintiff was to contact. The letter also stated that no final disposition had been made of plaintiff's prior complaints due to a heavy caseload. Because of difficulties plaintiff had experienced with certain individuals in the NPS EEO office,[2] plaintiff requested an

---

1. I note that this document is, in fact, dated April 17, 1981, and is addressed to the Department's Assistant Director of the Equal Opportunity Office, whereas the document attached to plaintiff's brief is undated and is not addressed to anyone in particular.

2. Plaintiff's concerns arose out of the fact that the individual who conducted the 1981 investigation of her November 1980 complaint had received a letter of commendation from one of the individuals she had named as an "alleged discriminating official" in her complaint. Thus, she had doubts about the objectivity of NPS EEO officials with respect to her complaints.

EEO counsellor from a different agency of the Department of Interior. A promise was made to look into this request, but plaintiff heard nothing more. On October 10, 1984, plaintiff filed this civil action.

As with Count II, it appears to me on the basis of the foregoing outline that plaintiff presented the complaint of discrimination covered by Count III to the proper administrative officials. Thus, I will deny defendant's motion as to Count III.

In the alternative, while the motion and proposed order are not framed in this fashion, defendant appears to argue that portions of all three counts should be dismissed. Specifically, defendant contends plaintiff should be barred from presenting to the Court any claims of discrimination occurring after November 17, 1980 and any claims of retaliation occurring after April 17, 1981—the dates on which her formal written complaints were filed. This argument is without merit.

■ As outlined above, on at least one occasion plaintiff updated the formal complaints with additional written submissions which she believed provided additional documentation concerning her claims of discrimination and/or retaliation. Thus, at a minimum, plaintiff's complaint properly covers acts of discrimination and/or retaliation through September 24, 1982.

Furthermore, defendant construes the nature of the exhaustion requirement in Title VII cases too broadly. The most recent Third Circuit authority on this issue is found in *Waiters v. Parsons*, 729 F.2d 233 (3d Cir.1984). In *Waiters*, plaintiff filed an informal EEOC complaint in 1978 which she subsequently withdrew. In 1979 she filed a formal complaint alleging retaliation for her 1978 complaint. The EEOC found support for these allegations and recommended that the appropriate individuals be admonished in writing; however, the complaint was never finally adjudicated by the agency, and no right to sue letter was ever issued. On December 23, 1981, plaintiff was discharged. She promptly filed a Title VII complaint in federal court alleging that her discharge was motivated by defendant's desire to retaliate against her for exercising her rights under Title VII. The district court dismissed the complaint for failure to exhaust administrative remedies inasmuch as plaintiff had not presented the fact of her discharge to the EEOC for possible resolution.

The Third Circuit reversed. In so doing, it relied upon a line of cases permitting suits based on new acts that occur during the pendency of the EEOC investigation, which are fairly within the scope of the EEOC complaint or the investigation growing out of that complaint, without requiring the victim to file additional EEOC complaints. *Waiters*, 729 F.2d at 237 (collecting cases). The court reasoned that "once the EEOC has tried to achieve a consensual resolution of the complaint, and the discrimination continues, there is minimal likelihood that further conciliation will succeed." *Id.* The fact that the discharge occurred some thirty months after plaintiff filed her EEOC complaint and that different officials were involved in the discharge and the acts of discrimination alleged in the EEOC complaint did not dictate a different result. The Court reasoned that the core grievance presented in both plaintiff's EEOC complaint and her district court complaint was the same—that plaintiff had been the victim of retaliation for exercising her Title VII rights. Under these circumstances, the Court found that "the policy of promoting conciliation would not be furthered by allowing the defendants to delay having to answer in court for retaliatory action allegedly taken against appellant for asserting her rights." 729 F.2d at 238.

■ Plaintiff has more than adequately presented the basics of her grievance to the appropriate administrative agency, more than 180 days have passed, and the agency has taken no final action. Under such circumstances plaintiff is entitled to proceed in court with the allegations contained in her complaint.[3]

3. I note, however, that plaintiff alleges in her complaint that defendant has engaged in dis-

## ORDER

AND NOW, this 3rd day of April, 1985, it is hereby Ordered that defendant's motion to dismiss, or in the alternative for summary judgment as to Counts II and III of the Complaint is DENIED.

AND IT IS SO ORDERED.

criminatory practices which "include but are not limited to" certain specified actions. I express no opinion as to the viability of any claims not clearly set forth in the complaint. I further believe that if plaintiff wishes to proceed with respect to discriminatory actions not specifically enumerated in the complaint defendant is entitled to a clear statement at this time of the allegations which it will be asked to defend.